UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK ROBERT COOPER,

        Petitioner,

                                      Case No. 1:06-CV-42

v.

                                      Hon. ROBERT HOLMES BELL

MARY BERGHUIS,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

    **I.**      **Background**

        This case arose from the robbery of a Dairy Queen on April 12, 2001, by a masked perpetrator.  After a jury trial, petitioner was convicted of the armed robbery, contrary to M.C.L. §750.529.  Pursuant to M.C.L. §769.12, he was sentenced as a fourth habitual offender to a prison term of 17 to 40 years.

        Petitioner, through counsel, raised the following issue on appeal:

    I.        Was [petitioner] denied due process of law by plaintiff's destruction of evidence from which DNA evidence was derived, where the destruction of said evidence deprived [petitioner] of the opportunity to show that it was exculpatory and the evidence of his guilt was insufficient absent the DNA evidence presented?

*See* docket no. 23.  Petitioner then filed a supplemental, pro se Standard 11 Brief, raising these additional issues:

I.      [Petitioner] was denied due process when the prosecution failed to present sufficient evidence to convict petitioner of armed robbery.

II.     [Petitioner] was denied his Sixth Amendment right to the ineffective [sic] assistance of trial counsel.

    A.      Counsel failed to object to the instruction that the trial court gave to the jury when they submitted question [sic] to the court regarding the DNA typing results.

    B.      Failure to request a lesser included offense instruction to charge of armed robbery.

    C.      Failure to object to the admission of photographs of the mask.

    D.      Where counsel failed to put [petitioner] in a lineup.

*Id.*

The Michigan Court of Appeals affirmed his conviction. *People v. Cooper*, No. 251531 (Mich. App. April 14, 2005). Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied. *People v. Cooper,* No. 128642 (Mich. Oct. 31, 2005).

Petitioner signed the present petition for federal habeas corpus challenging his conviction on the following grounds:

I.      [Petitioner] was denied due process of law by Plaintiff's destruction of evidence from which DNA evidence was derived, where the destruction of said evidence deprived [petitioner] of the opportunity to show that it was exculpatory and the evidence of his guilt was insufficient absent the DNA evidence presented.

II.     [Petitioner] was denied due process when the prosecution failed to present sufficient evidence to convict [petitioner] of armed robbery.

III.    [Petitioner] was denied his Sixth Amendment right to the ineffective [sic] assistance of trial counsel where counsel failed to put [petitioner] in a lineup.

2

> A.      Counsel failed to object to the instruction that the trial court gave to the jury when they submitted questions to the court regarding the DNA typing results.
>
> B.      Failure to request a lesser included offense instruction to charge of armed robbery.
>
> C.      Failure to object to the admission of photographs of the mask.

Petitioner's claims are now before the court.

## II.      Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. § 2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution of laws of the United States."  Before such relief may be granted in federal court, however, the substance of each claim must be fairly presented to all available state courts, thus exhausting all state remedies.  *Picard v. Connor,* 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. § 2254 (b)(1)(A).  Here, petitioner has exhausted each of his claims in state court.

Where a state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides in part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

If the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts, a state court's decision is "contrary to" clearly established Federal law. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.    Discussion

### A.    Exculpatory DNA evidence

The incriminating DNA evidence linking petitioner to this crime was found in a red shirt used by the robber as a mask.[1] Petitioner contends that because the government destroyed parts of the shirt, he could not establish that the destroyed evidence contained exculpatory DNA. In petitioner's words, he "could have used the shirt to show that he was only one of many contributors

---

[1] The courts and parties have referred to this red piece of clothing as a shirt, a sweatshirt, and a mask.

of DNA material to it." Petition "Appendix B" at p. 5. Petitioner's contention is without merit. The

Michigan Court of Appeals addressed this issue as follows:

> Defendant was convicted of robbing a Dairy Queen restaurant in Grand Rapids. The store employees could not positively identify the perpetrator because he covered his face with a child's sweatshirt. The police found the sweatshirt in the restaurant's parking lot and DNA was detected on portions of the sweatshirt that matched defendant's DNA. The sweatshirt was also identified as belonging to a relative of defendant's girlfriend.

> Defendant argues that his due process rights were violated because the trial court denied defendant's motion to suppress the DNA evidence despite the fact that the police destroyed the sweatshirt before trial. "Whether defendant's right to due process was violated is a question of law. This Court reviews questions of law de novo." *People v Walker*, 234 Mich App 299, 302; 593 NW 2d 673 (1999). We review the trial court's findings of fact for clear error. MCR 2.613( C).

> In order to prevail on this argument, defendant was required to show that the police acted in bad faith.

>> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady* [*v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963)], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant . . . . We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. [*People v Huttenga,* 196 Mich App 633, 642-643; 493 NW 2d 486 (1992), quoting *Arizona v Youngblood,* 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988).]

Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith. *People v Ricardo Johnson,* 197 Mich App 362, 365; 494 NW2d 873 (1992).

In this case, DNA testing was conducted on two samples of the sweatshirt, which were cut out from the sweatshirt. Those samples were not destroyed and were still available for testing at the time of trial. But the remaining portion of the sweatshirt was destroyed after a police detective mistakenly included it on a list of property that could be destroyed. The trial court did not clearly err in finding that the sweatshirt was inadvertently included on the list and that its destruction was not in bad faith. Further, defendant has not shown that the evidence might have been exculpatory. As the trial court observed, the samples taken from the sweatshirt were not destroyed and were still available for further testing. DNA found on those samples matched defendant's DNA and, even if DNA could have been found on the destroyed portion of the sweatshirt, that would not have eliminated defendant as a suspect. Accordingly, the trial court did not err in denying defendant's motion to suppress the DNA evidence.

*People v. Cooper*, No. 251531, slip op. at 1-2.

The Supreme Court rule, properly applied by the Michigan court, distinguishes between "material exculpatory" evidence and merely "potentially useful" evidence to which the bad-faith requirement applies.

We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld (citations omitted). In *Youngblood,* by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it would have been subject to tests, results of which might have exonerated the defendant." 48 U.S. at 57, 109 S.Ct. 333. We concluded that the failure to preserve this "potentially useful information" does not violate due process "*unless a criminal defendant can show bad faith in the part of the police.*" Id., at 58, 109 S.Ct. 333 (emphasis added).

*Illinois v. Fisher,* 540 U.S. 544, 457-48 (2004).

The Michigan Court of Appeals correctly applied the Supreme Court precedent in determining that the government's failure to preserve potentially useful evidence does not violate due process unless a criminal defendant can show bad faith on the part of the police. *Id.,*

6

*Youngblood*, 488 U.S. at 58.  Petitioner does not contend that the shirt was destroyed in bad faith.

Accordingly, he has no basis to assert a due process claim under *Fisher* and *Youngblood*.

The Michigan Court of Appeals' decision was neither contrary to, nor an

unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief for this claim.

### B.   Sufficiency of the evidence

Next, petitioner contends that the government presented insufficient evidence to

establish that he committed the armed robbery.  Specifically, petitioner states that "[t]here is nothing

other than inadmissible DNA evidence that could remotely place [petitioner] at the scene of the

crime."  Petition "Attachment B" at p. 7.  The Michigan Court of Appeals addressed this issue as

follows:

> Defendant also argues that the evidence was insufficient to convict him of armed robbery because the prosecution failed to prove that he was the person who committed the charged offense.  Defendant's argument is premised on his claim that the DNA evidence should have been suppressed.  Because we have concluded that the DNA evidence was admissible, defendant's argument lacks merit.  Although the store employees could not positively identify defendant as the perpetrator because the perpetrator was wearing a mask, defendant's physical characteristics matched those of the perpetrator, and DNA that matched defendant's DNA was detected on a sweatshirt that was found in the store parking lot and was identified as having been worn as a mask by the perpetrator.  Additionally, defendant's girlfriend's great niece, whom defendant and his girlfriend often visited, identified the sweatshirt as belonging to her.  Viewed in light most favorable to the prosecution, the evidence was sufficient to identify defendant as the perpetrator beyond a reasonable doubt.  *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992).

*People v. Cooper*, No. 251531, slip op. at 2.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that the Fourteenth

Amendment's Due Process Clause protects a criminal defendant against conviction "except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship,* 397 U.S. at 364.  In the first instance, of course, this is a question for the fact-finder.  Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Sufficient evidence exists in this case to identify petitioner as the robber.  Vicki Playter, the Diary Queen employer who was face-to-face with the robber, described him as a white male, approximately 5'7" tall, and described his build as "kind of wiry" or "pretty scrawny looking." Trial Trans. II at 188-96.   The perpetrator wore a red mask, which was found in the parking lot after the robbery. *Id.* at 195-96.  Ms. Playter could see the robber's hairline through the mask, which she described as receding. *Id.* at 188-89.  At trial, Ms. Playter identified petitioner as the robber, upon his height, build and hairline. *Id.* at 195-96.  Jason Nowak, the store manager, identified the mask as a red shirt with eye holes cut into it. *Id.* at 204.  He could see the robber's hair through the mask, which he described as "dark-ish, black-ish, gray color." *Id.* at 205.  Another Dairy Queen employee, Sarah Bird, described the robber as having a red shirt over his face, with a receding hairline of "a gray-ish black color." *Id.* at 230-31.

Grand Rapids Detective John Purlee testified that the four Dairy Queen employees identified the red shirt found in the parking lot as the shirt worn by the robber.  Trial Trans. III at

256-58.  Dean Garrison, a crime scene technician, testified that the sweatshirt was red, a child's size medium, had "101 Dalmatians" printed on it and was "tied."  Trial Trans. II at 243-45.

Lorraine Van Dyke testified that she lived with her granddaughter, "KF."  Trial Trans. III at 262-66.  Lorraine knew petitioner, because he dated her sister for three or four years. *Id.* at 262-63.  Petitioner would visit her house often, sometimes on a daily basis, and would take care of KF on occasion.  *Id.* at 266-67.  KF testified that she was 7 1/2 years old, that she liked the "101 Dalmatians" movie and liked "wearing stuff about it."  *Id.* at 271-72.  KF identified the red shirt that the robber used as mask; it was a Christmas present from her grandmother in 2000, which they left in a closet because it was too big.  *Id.* at 272-73.  KF wore a green shirt her mother bought that was the right size.  *Id.* at 273.  They did not have the red shirt anymore and KF did not know what happened to it.  *Id.* at 273-74.  At one time, KF remembered showing the red shirt to petitioner. *Id.* at 275.

Finally, Michelle Marfori, a forensic scientist with the Michigan State Police Criminal Laboratory, testified that she performed DNA testing on the cuttings from the shirt in June 2001.  *Id.* at 323-24.  Then, in May 2002, she performed a DNA test on a reference sample taken from petitioner.  *Id.*  In the shirt cutting taken near an "eye hole" of the mask, the DNA on the shirt matched petitioner's DNA on 10 of 13 locations.  *Id.* at 333-34.  In a shirt cutting taken near the "mouth" of the mask, the DNA on the shirt matched petitioner's DNA on all 13 locations.  *Id.*  Ms. Marfori testified that for the DNA taken from the "mouth," the probability that a randomly chosen individual could have contributed to the mixture was one in 5.9 billion for the Caucasian population. *Id.* at 336.  Ms. Marfori concluded that, based on the DNA evidence, petitioner could not be eliminated as a donor from the samples found on the shirt.  *Id.*  Viewing this evidence in the light

most favorable to the prosecution, the court concludes that a rational trier of fact could have found that petitioner was the perpetrator of this crime beyond a reasonable doubt.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Petitioner is not entitled to relief for this claim.

### C.    Ineffective assistance of counsel

Petitioner contends that his counsel was ineffective because: he failed to object to the trial court's response to a question from the jury; he  failed to request a lesser included offense instruction; he failed to object to the admission of photographs of the mask found at the scene; and, he failed to place petitioner in a lineup.  In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland,* 466 U.S. at 690.  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.  In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense."  *Moran v. Triplett*, No. 96-

10

2174, 1998 WL 382698 at *3 (6th Cir. 1998).  Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances."  *United States v. Boone*,  437 F.3d 829, 839 (8th Cir.) (internal quotes omitted).

### 1. Failure to object to the trial court's ruling

Petitioner contends that the counsel was ineffective for failing to object to the trial court's response to a jury question, which, according to petitioner, "foreclosed" the jury from re-reading the expert witness' testimony regarding certain DNA evidence.  The court addressed the questions as follows:

I received a couple of questions from you. The first was:

"In regards to DNA typing results, does column 4 Amelogenin " -- and I don't know if I'm pronouncing that right or not, it's A-m-e-l-o-g-e-n-i-n -- "(gender) state only male DNA was found in the tested areas?"

The other question was:

"Could the consonstraction in sample 0417.01A and 04914.01B be consistent with casual contact?"

I hate to be elusive, but the simple fact of the matter is, I'm really not in a position to answer either of these questions. What I have to ask you to do, I guess, is to go back in your collective memory, think about the testimony and what was heard. All of the evidence is in.

Questions of this nature, I suppose, at the time if an expert was testifying, could be addressed to that expert. But the witnesses are gone, and the case has been closed, and the proofs are closed, and we're not in a position to reopen them to answer questions.

So I guess the best thing I can tell you is to think back on what was said, how it was said. Look at the evidence you have. Use your collective common sense and intelligence, whatever. If you're able to answer these satisfactorily from that evidence, fine. If you're not, then it's not there. And that's the best I can tell you on

11

that. So I'm sorry. The bottom line is, the case is over with and the evidence that you've gotten is done.

Head on back. See what you can do with it. And if you have any other questions, there are certain types of questions that I'm able to answer and certain that are a little harder. And this is one of those that I really can't answer directly for you, okay?

Trial Trans. V at 3-4.

The Michigan Court of Appeals rejected petitioner's claim:

Next, defendant argues that trial counsel was ineffective. In order for this Court to reverse defendant's conviction due to ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced defendant that he was denied his right to a fair trial. *People v. Pickens*, 446 Mich. 298, 338; 521 NW2d 797 (1994). Defendant must also overcome the presumption that the challenged action might be considered sound trial strategy. *People v. Tommolino*, 187 Mich.App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show that there was a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. *People v. Johnnie Johnson, Jr*, 451 Mich. 115, 124; 545 NW2d 637 (1996). The burden is on defendant to establish factual support for his claim. *People v. Hoag*, 460 Mich. 1, 6; 594 NW2d 57 (1999).

Defendant argues that the trial court improperly foreclosed the rereading of testimony when responding to questions from the jury and that counsel was ineffective for failing to object. The record discloses that the trial court was not asked to reread testimony, but was asked specific questions about an expert witness' testimony that were not specifically addressed in her testimony. The trial court responded that it was not in a position to answer the jury's questions. Because the jury did not request a rereading of the expert's testimony, counsel was not ineffective for failing to object to the trial court's response on this basis.

*People v. Cooper*, No. 251531, slip op. at 2-3.

Petitioner's claim of ineffective assistance of counsel is based upon a factual scenario that did not occur. As demonstrated above, the jury did not request the trial court to re-read the expert witness' testimony, but rather to construe or explain it. That, the trial judge may not do. The court did not foreclose the re-reading of that testimony. Accordingly, this claim should be denied.

### 2.    Lesser included offense instruction

Petitioner also contends that his counsel was ineffective because he did not request a lesser included offense instruction to the armed robbery charge. The Michigan Court of Appeals rejected this claim:

> Defendant argues that counsel was also ineffective for not requesting an instruction on a lesser included offense. But defendant does not identify what lesser offense instruction should have been requested. Furthermore, defendant's theory at trial was that he was not involved in the offense. Thus, a request for an instruction on a lesser offense would have been inconsistent with defendant's theory of defense. Defendant has not overcome the presumption that counsel's decision not to request a lesser included offense instruction was sound trial strategy. *Tommolino, supra* at 17.

*People v. Cooper*, No. 251531, slip op. at 3.

As the Michigan Court of Appeals observed, defense counsel's trial strategy was to characterize this prosecution as one of mistaken identity. Trial Trans. II at 183. A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *McQueen*, 99 F.3. at 1311 (internal quotation marks omitted).

Petitioner has failed to overcome the presumption that counsel's failure to request a lesser included offense instruction was sound trial strategy. Petitioner has not identified any lesser included offense that defense counsel could have asserted that was consistent with this trial strategy. Indeed, it is difficult to imagine any lesser included offense of robbery that would be consistent with petitioner's claim that he did not rob the Dairy Queen. Defense counsel's decision not to seek a lesser included offense was consistent with petitioner's effort to seek full acquittal. Trial counsel

will often be presented with a strategic decision to either request or not request specific jury instructions at trial. Faced with such a situation, counsel will not be deemed constitutionally ineffective if they choose not to request a particular instruction, provided that such a decision constitutes sound trial strategy. *See, e.g., Scott v. Elo,* 302 F.3d 598 (6th Cir. 2002) (counsel's failure to request an involuntary manslaughter instruction was held to not be deficient performance where the evidence did not support a finding of involuntary manslaughter, and counsel had made a strategic decision to advance to other defense theories); *Lewis v. Russell,* 42 Fed. Appx. 809, 810-11 (6th Cir. 2002) (trial counsel's failure to request a jury instruction on lesser-included voluntary manslaughter in a murder trial constituted a reasonable strategic decision consistent with the defendant's effort to seek full acquittal on the basis of self-defense). This claim should be denied.

### 3. Failure to object to the admission of photographs

Petitioner claims ineffective assistance of counsel alleging he was unduly prejudiced by the admission into evidence of photographs of the mask in violation of MRE 403. The Michigan Court of Appeals addressed this claim as follows:

> Defendant also argues that counsel should have objected to the admission of photographs of the sweatshirt because the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. MRE 403. The photographs were probative because they enabled witnesses to identify the sweatshirt as the same sweatshirt that was worn by the perpetrator, and which belonged to a relative of the defendant's girlfriend. Defendant has not demonstrated how the photographs were unduly prejudicial under MRE 403. Because any objection to the evidence on this basis would have been futile, counsel was not ineffective for failing to object. *People v Darden,* 230 Mich App 597, 605; 585 NW2d 27 (1998).

*People v. Cooper*, No. 251531, slip op. at 3.

The state appellate court determined that the photographs were admissible under Michigan law. Under these circumstances, defense counsel had no basis to support an objection to

the admission of this evidence.  "There can be no Sixth Amendment deprivation of effective counsel

based on an attorney's failure to raise a meritless argument."  *United States v. Sanders*, 165 F.3d

248, 253 (3rd Cir. 1999).  *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth

Amendment does not require counsel . . . to press meritless issues before a court").  This claim

should be denied as meritless.

### 4.   Counsel's failure to request a lineup

Finally, petitioner contends that his counsel was ineffective for failing to request a

lineup.  In his cryptic argument, petitioner states that he requested a lineup, that a lineup "is

definitely preferable to an arraignment confrontation," and that counsel did not request a lineup from

the court.  Petition "Attachment B" at p. 8. The Michigan Court of Appeals addressed this claim as

follows:

> Lastly, defendant argues that counsel was ineffective for not requesting a
> lineup.  We disagree.  Each of the store employees admitted at trial that they could
> not positively identify defendant as the perpetrator.  We fail to see how a lineup
> could have aided defendant in this situation.  Instead, counsel chose to cross-examine
> the police detective at trial about the failure to conduct a lineup, suggesting that this
> shed doubt on defendant's identity as the perpetrator.  On this record, defendant has
> not shown that counsel's decision not to request a lineup was either objectively
> unreasonable or prejudicial.

*People v. Cooper*, No. 251531, slip op. at 3.

Even if defense counsel had acted unreasonably in failing to request a lineup,

petitioner has failed to establish that he was prejudiced, i.e., that the outcome of his trial would have

been different had defense counsel requested a line-up.  Defense counsel cross-examined the victims

to establish the fact that they could not identify the perpetrator's face due to the mask.  Trial Trans.

II at 197, 218-20.  In addition, as the state appellate court pointed out, defense counsel cross-

examined the police detective at trial about the failure to conduct a lineup.  Trial Trans. III at 302-

15

03. This cross-examination highlighted the fact that the victims were unable to identify the perpetrator's face. This was to petitioner's advantage. (Moreover, it is also possible that given another opportunity, more time, and not being under stress of an armed robbery, the witnesses might have decided they could recognize petitioner. This was a chance petitioner would have taken with a line-up. After all, the witnesses had seen the robber's eyes, complexion, hair and hairline.) Under these circumstances, petitioner was not prejudiced by counsel's failure to request a lineup. *See, e.g., United States v. Eaton*, 20 Fed. Appx. 763, 770 (10th Cir. 2001) (defendant was not prejudiced by defense counsel's failure to request an in-person lineup to challenge a bank teller's identification of him as a bank robber, when counsel elicited testimony on cross-examination that the teller had been unable to identify defendant from a photo array).

### 5. Summary

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on these claims.

### IV. Conclusion

I respectfully recommend that petitioner's habeas corpus petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: January 28, 2009                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge

16

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).